Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued May 11, 2004          Decided June 25, 2004

No. 03-7092

Bow G. Jung,
Appellant

v.

Mundy, Holt & Mance, P.C. and
Reginald L. Holt,
Appellees

———

Appeal from the United States District Court
for the District of Columbia
(No. 02cv01421)

———

*John S. Lopatto III* argued the cause and filed the briefs for appellant.

*Reginald L. Holt* argued the cause and filed the brief for appellees.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: GINSBURG, *Chief Judge*, and SENTELLE and ROBERTS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROBERTS.

ROBERTS, *Circuit Judge*: In this legal malpractice action, the appellant sued attorneys for litigating against him throughout a multi-faceted probate dispute, causing him to incur legal fees. According to the appellant, the attorneys had a duty not to act adverse to his interests, and their litigation constituted a conflict of interest. The district court granted summary judgment for the attorneys, because the appellant — after learning of the conflict of interest — waited beyond the three-year limitations period for malpractice actions before filing suit.

We reverse. The litigation brought by the attorneys, if wrongful as alleged, constituted a continuing tort. Under District of Columbia law, the appellant may pursue claims "for injuries attributable to the part of the continuing tort that was committed within the limitations period immediately preceding the date on which suit [was] brought." *Beard v. Edmondson & Gallagher*, 790 A.2d 541, 548 (D.C. 2002).

## I. Background

The roots of this real-life *Bleak House* saga doubtless stretch further back in time, but the precipitating event was the death of Lew Gin Gee Jung (Mother Jung) in January 1995. Mother Jung was survived by five children: three daughters, Fay Lee, Yok Jung (Yok), and May Jung (May); and two sons, Bow Jung (Bow) and Wee Jung (Wee). After her death, myriad disputes between Bow, May, Yok, and Wee (Fay Lee did not arrive on the scene until later) plunged the family into nine years of bitter litigation (so far) over the estate and related matters.

This case, one of a half-dozen arising in the wake of Mother Jung's death, concerns Bow's claims against appellees Reginald L. Holt and Mundy, Holt & Mance, P.C. (collectively attorneys), who had been engaged by Mother Jung for estate planning. Wendell Robinson — Mother Jung's son-in-law

and May's husband — worked for the Mundy, Holt & Mance law firm as a law clerk. After meeting with Mother Jung on more than one occasion, Robinson drafted multiple versions of her will, culminating in a final draft that she was allegedly supposed to sign at a meeting in the summer of 1994. In that draft, Mother Jung described Bow as "my son," appointed him as an alternate Personal Representative, and named him as a beneficiary. Final Draft of Will at 2, 4. The draft will made no mention of May, Robinson's wife. Mother Jung did not sign the final draft of her will at the scheduled meeting, because Robinson "left the correct draft of the Will at [his] home." Compl. ¶ 20. Mother Jung subsequently never signed the will and died intestate.

Shortly after Mother Jung's death, Bow, Wee, Yok, and May allegedly agreed that they would all serve as co-Personal Representatives and would sell Mother Jung's home to Yok below market price for $210,000. At some point, however, the attorneys entered into an attorney-client relationship with May. The attorneys prepared and in April 1995 filed a Petition for Probate that named May as an heir and sought to have her appointed the sole Personal Representative of the estate, *see* Petition for Probate, Estate of Lew Gin Gee Jung, despite the fact that the final draft of Mother Jung's will prepared by the same attorneys failed to name May as either a beneficiary or a Personal Representative, *see* Final Draft of Will at 2–5. The Probate Division of the Superior Court of the District of Columbia appointed May as the sole Personal Representative in May 1995, and the attorneys continued to represent the estate and May in her capacity as Personal Representative throughout the entirety of the probate proceedings.

Bow withdrew from the agreement among the children upon learning that May had filed the Petition for Probate, triggering several rounds of litigation over the sale of the house in the Probate Division beginning in June 1995. Throughout that litigation, the attorneys pursued "a campaign of pleadings to the Probate Division…charging plaintiff Bow Jung with fraud for repudiating the oral agreement." Compl. ¶ 43(a). In January 1997, the Probate Division ruled

that the oral agreement was not enforceable and that the home could not be sold for less than the market value of $400,000; the District of Columbia Court of Appeals subsequently affirmed that decision. *In re Jung*, 791 A.2d 920 (D.C. 2000) (unpublished table decision). The attorneys then allegedly used estate funds to hire a non-party attorney to file a motion on behalf of the estate, accusing Bow of committing fraud upon the estate and seeking to recover compensatory damages, attorneys' fees, and costs incurred during the dispute over the house. Compl. ¶ 45. The Court of Appeals summarily rejected that motion in November 2001. *Id.*

In August 1995, May challenged her brother's heirship by filing a Complaint to Determine Heirship, requiring Bow to produce a birth certificate to prove that he was a natural born son of Mother Jung. Born in rural China in 1933, Bow could not produce a "Western style" birth certificate issued contemporaneously with his birth, but instead produced immigration papers and other records indicating that he was the son of Mother Jung. *See id.* ¶¶ 38, 39. Four years of litigation ensued; May in her capacity as Personal Representative would not accept Bow's proffered documentation as proof of his heirship and refused to distribute any portion of his intestate share of the estate. That dispute finally ended on December 16, 1999, when the Probate Division declared him an heir after DNA testing proved he was the natural son of Mother Jung. *Id.* ¶¶ 39, 41.[1]

Bow became aware of the attorneys' relationship with Mother Jung in December 1997, when Robinson testified during a deposition about the work he had done for Mother Jung, including the preparation of the draft will that was to have been signed in the summer of 1994. Robinson Dep. at 223, 234. Bow's counsel requested that the attorneys produce

---

[1] Even Dickens would have been impressed by the modern twist in this chapter of the Jung family's *Bleak House*: the Probate Division ordered the exhumation of Mother Jung's body for DNA testing to settle the heirship dispute.

a copy of that draft will, and they complied on January 13, 1998.

On July 16, 2002, Bow brought this legal malpractice suit against the attorneys, based on his asserted status as an intended beneficiary in Mother Jung's draft will. He claimed that the attorneys committed malpractice in negligently failing to assist Mother Jung in executing a will that carried out her testamentary intent and that their employee, Robinson, "wrongly delayed and impeded Mother Jung [from] signing the final draft of [her] Will." Compl. ¶ 20.

Bow also claimed that the attorneys committed legal malpractice by allowing a conflict of interest to arise from their legal representation of both Mother Jung and May. The conflict allegedly arose because the draft will that the attorneys had prepared for Mother Jung excluded May as a beneficiary and Personal Representative. Bow charged that by later representing May in her capacity as Personal Representative and probating the estate that included May's intestate share, the attorneys "negligently abandoned their original client's intent and interest, and negligently permitted their conflict of interest to run unchecked and continuous[ly] from April 27, 1995 to the present." *Id.* ¶ 59. He asserted that the attorneys' allegedly tainted representation of May damaged him by compelling him to incur legal fees fending off the challenge to his heirship and the charge that he had committed fraud on the estate, and generally defending his interests during the probate of the estate with May as Personal Representative.

The attorneys filed a motion to dismiss or for summary judgment, arguing that: (1) Bow was not entitled to bring the suit because he was not a party to the contract for legal services to represent Mother Jung in drafting her will; (2) Bow's claims were barred by the statute of limitations; and (3) Bow impermissibly split claims between the present suit and an action he filed in Superior Court against Robinson. The district court found that Bow was an intended beneficiary based on his inclusion in the draft will, which gave him standing to bring a malpractice claim against the attorneys.

*Jung v. Mundy, Holt & Mance, et al.*, No. 02–1421, Mem. op. at 7–8 (D.D.C. June 17, 2003). The district court held, however, that all of Bow's claims in the July 16, 2002 complaint were barred by the District of Columbia's three-year statute of limitations for legal malpractice, finding that Bow "was on inquiry notice of the existence of a cause of action against Defendants" by January 1998, when he received a copy of the draft will. *Id.* at 11. The district court accordingly granted the attorneys' motion for summary judgment.

## II.  Analysis

We review *de novo* whether Bow's claims are barred by the statute of limitations. *See*, *e.g.*, *Hall v. Clinton*, 285 F.3d 74, 81 (D.C. Cir. 2002). At oral argument, Bow's counsel waived consideration of the claims pertaining to the attorneys' conduct in preparing Mother Jung's will. Oral Arg. at 4:56–5:25. We accordingly consider only whether the statute of limitations bars Bow's legal malpractice claim based on the alleged conflict of interest.

The district court found that the statute of limitations for Bow's legal malpractice claims began to run in January 1998 when he received a copy of the draft will prepared by Robinson. An action for legal malpractice must be filed within three years "from the time the right to maintain the action accrues." D.C. CODE § 12–301(8). "The statute of limitations for a legal malpractice claim is governed by the discovery rule in cases where the relationship between the fact of injury and some tortious conduct is obscure at the time of injury." *R.D.H. Communications, Ltd. v. Winston*, 700 A.2d 766, 768 (D.C. 1997) (quotation omitted). Under this rule, a cause of action accrues when a plaintiff knew or should have known through the exercise of reasonable diligence of: "(1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing." *Knight v. Furlow*, 553 A.2d 1232, 1234 (D.C. 1989).

Under Bow's conflict of interest theory, he began sustaining injury when the attorneys commenced their representa-

tion of May and took action that forced him to incur legal fees to defend his interests. Under the discovery rule, however, the three-year limitations period did not begin running until Bow received a copy of the draft will in January 1998. The receipt of the draft will provided Bow with all the information necessary to initiate legal action for conflict of interest: Mother Jung excluded May, but named him as a beneficiary and an alternate Personal Representative. He thus discovered that the attorneys' subsequent representation of May ran counter to his interest as an intended beneficiary under the draft will. The district court thus properly determined that Bow's cause of action accrued in January 1998 because "Defendants' representation of May . . . as Personal Representative of the Estate represented a conflict of interest given Mother Jung's specific exclusion of May in the draft Will." Mem. op. at 12.

Bow filed suit more than three years after January 1998, but that is not the end of the matter. He argues that the litigation against him, tainted by the conflict of interest, was a continuing tort, and that therefore the three-year limitations period did not begin to run until the litigation ended, making his July 16, 2002 complaint timely. Alternatively, Bow contends that at the very least he may recover for injuries caused by the attorneys during the three-year period prior to the filing of the complaint.

This court has recognized that the prosecution of a lawsuit "can constitute a continuing tort" under District of Columbia law:

> [A] lawsuit is a continuous, not an isolated event, because its effects persist from the initial filing to the final disposition. . . . A defendant subject to a lawsuit is likely to suffer damage not so much from the initial complaint but from the cumulative costs of defense and the reputational harm caused by an unresolved claim.

*Whelan v. Abell*, 953 F.2d 663, 673 (D.C. Cir. 1992). The statute of limitations period for continuing torts begins to run once a plaintiff has inquiry notice of a potential cause of action. *See Hendel v. World Plan Executive Council*, 705

A.2d 656, 667 (D.C. 1997). As the District of Columbia Court of Appeals recently explained, "[w]hen the plaintiff is or should be aware that he or she is being injured by a continuing tort, the statute of limitations begins to run." *Beard*, 790 A.2d at 548. For Bow, that date was January 13, 1998. Bow is thus incorrect that the continuing nature of the litigation against him allowed him to sit on claims he knew or should have known of until the litigation ended.

But in the case of a continuing tort, filing after the limitations period has run does not mean that there can be no recovery. Instead, "[t]he plaintiff then may recover only for injuries attributable to the part of the continuing tort that was committed within the limitations period immediately preceding the date on which suit is brought." *Id.*; *accord John McShain, Inc. v. L'Enfant Plaza Props., Inc.*, 402 A.2d 1222, 1231 n.20 (D.C. 1979) ("If . . . the continuing tort is of the type that causes a series of separate or recurrent injuries, then only those damages stemming from conduct occurring within the limitations period are recoverable.") (quoted in *Beard*, 790 A.2d at 548). A contrary rule, barring any recovery for a continuing tort when the victim did not sue within the limitations period after discovery, would have the perverse result of conferring on the tortfeasor the right to continue the tortious conduct and harm the victim anew. *Cf. Page v. United States*, 729 F.2d 818, 822 n.25 (D.C. Cir. 1984).

The district court was correct that Bow filed the July 16, 2002 complaint after the limitations period had run on his tortious litigation claim, because he was on inquiry notice of a potential claim as of January 1998. The district court erred, however, by not applying the rule in *Beard* to that claim based on the continuing nature of the alleged tort. Bow raised the *Beard* rule before the district court. *See* Pl.'s Opposing P. & A. to Defs.' Mot. to Dismiss and Alt. Mot. for Summ. J. (Sept. 11, 2002), at 9 ("*Beard* held that even if the plaintiff is aware of the continuing tort, his injuries attributable to the continuing tort committed within the limitations period immediately preceding the complaint are recoverable."). According to Bow's pleadings, several aspects of the attorneys' adverse litigation continued into the three-year

statutory period prior to the filing of his complaint: (1) the heirship dispute, which did not conclude until December 16, 1999; (2) litigation concerning the sale of the house, which ended on June 6, 2000; and (3) the fraud motion before the District of Columbia Court of Appeals, which was litigated during 2001.

We therefore hold that Bow's conflict of interest claim is not completely barred by the statute of limitations. Bow may pursue his claim for those damages sustained from the alleged tortious litigation after July 15, 1999 — the three years preceding the complaint — through the present. Any damages Bow suffered as a result of the attorneys' conduct prior to July 16, 1999, are barred by the statute of limitations. *See L'Enfant Plaza E., Inc. v. John McShain, Inc.*, 359 A.2d 5, 7 (D.C. 1976) (when a plaintiff files suit after the limitations period has run on a continuing tort, "recovery is limited to damages resulting from the [tortious conduct] during 'the [three-year] statutory period preceding the filing of the suit' ") (quoting *Underwater Storage, Inc. v. United States Rubber Co.*, 371 F.2d 950, 953 (D.C. Cir. 1966); alteration in *McShain*).

\* \* \*

We reverse the district court's grant of summary judgment on the legal malpractice claim based on the alleged conflict of interest, and remand to the district court to permit Bow to pursue his claim with respect to the attorneys' conduct and any resulting damages within the three-year period prior to the filing of his complaint.