# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued September 20, 2017        Decided December 29, 2017

No. 16-7129

HOUSHANG H. MOMENIAN, ET AL.,
APPELLANTS

v.

MICHAEL M. DAVIDSON,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-00828)

---

*Christopher G. Hoge* argued the cause and filed the briefs for appellants.

*James N. Markels* argued the cause for appellee. With him on the brief was *Timothy R. Dingilian*.

Before: PILLARD and WILKINS, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: This legal-malpractice action arises from Defendant Michael M. Davidson's representation of Houshang and Vida Momenian (the "Momenians") in a

lawsuit filed in D.C. Superior Court on August 18, 2009 (the "2009 Litigation"). The Momenians settled the 2009 Litigation on October 12, 2010, but allege Defendant failed to explain that the settlement meant all of their claims were fully and finally dismissed. On May 6, 2015, the Momenians (collectively with the Houshang Momenian Revocable Trust, "Plaintiffs") sued Defendant for, *inter alia*, his allegedly negligent settlement advice. Defendant moved to dismiss pursuant to the three-year statute of limitations, arguing that if Plaintiffs had exercised reasonable diligence investigating their claims, they would have been on notice of the cause of action at some point prior to May 6, 2012. Defendant also moved to dismiss for failure to state a claim on the merits.

The District Court twice dismissed the complaint as untimely: first with leave to amend, and second with prejudice, concluding that Plaintiffs' amended complaint failed to allege facts sufficient to overcome the timeliness bar.

The District Court engaged in a thorough and careful analysis of the timeliness issue. However, taking the allegations of the complaint as true and drawing all reasonable inferences in Plaintiffs' favor, we do not agree that Plaintiffs' claims are conclusively time barred at the pleading stage. Under the circumstances of this case, including the parties' attorney-client relationship, Plaintiffs' efforts to check in with Defendant about the 2009 Litigation every three months following the 2010 settlement plausibly fulfilled their duty to investigate their affairs with reasonable diligence. It is therefore plausible that Plaintiffs' claims did not accrue prior to May 6, 2012. Accordingly, we reverse and remand for proceedings consistent with this opinion.

3

**I.**

The following facts are taken from the operative complaint and assumed true for the purpose of reviewing Defendant's motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The 2009 Litigation resulted from a series of real-estate transactions in Washington, D.C. In 1990, the Momenians purchased three properties from Paul and Amelia Interdonato (the "Interdonatos") with a $265,000 promissory note (the "Note") secured by the properties' deeds of trust. In January 1998, Paul Interdonato wrote a letter to Houshang confirming the Note's remaining balance of $181,167.24.

Over the next four years, Plaintiffs attempted several direct and indirect payments on the Note by transferring real-estate-related assets to the Interdonatos. Specifically, they allege four such payments, in the amounts of $10,000, $29,999.46, $50,000, and an unspecified amount of rent apparently collected by the Interdonatos from tenants of a property owned by Plaintiffs. On January 1, 2002, Plaintiffs and the Interdonatos entered into a Note Modification Agreement stating Plaintiffs' "total outstanding indebtedness to the Interdonatos" was $141,898.47 and that Plaintiffs would pay that balance at a rate of $1,300 per month. These payments continued until November 2012, amounting to $197,600.

Defendant filed the 2009 Litigation on the Momenians' behalf in August 2009. That complaint alleged the Interdonatos did not properly credit the four payments Plaintiffs claimed to have made on the Note. During discovery, Houshang repeatedly asked Defendant to hire an accountant or have one appointed by the court to "do an analysis and computation of the amounts which should have been credited

to Plaintiffs' Note." J.A. 90. No such accountant was ever hired or appointed during the 2009 Litigation.

On Defendant's advice, the Momenians settled the 2009 Litigation on October 12, 2010, by executing a praecipe stating "the Clerk of [] Court will dismiss with prejudice this action." J.A. 90. Pursuant to the settlement, the Interdonatos agreed to credit $15,000 to the Note balance immediately. At the time he signed the praecipe, Houshang believed the settlement involved only one of the four claimed credits because, Plaintiffs allege, Defendant did not adequately explain that dismissal of the action "with prejudice" meant *all* claims were fully and finally dismissed. Houshang believed "other aspects of his claim, having to do with other amounts which he claimed should have been credited to Plaintiffs' Note, would be referred to the Court and/or a Court-appointed accountant." *Id.*

Plaintiffs allege Defendant continued to represent them in the 2009 Litigation after the October 2010 settlement. In support they offer an invoice from Defendant for a period ending May 15, 2011, which states:

> Promissory note issues
>
> December – Preparation of ltr. to atty. Interdonato enclosing promissory note schedule print-out by accountant (12/3/10)
>
> January to April – left telephonic message for atty. Interdonato; conference w/HM to discuss promissory note, review of document prepared by HM; telephonic conferences w/ accountant, forwarding documents to accountant; review of preliminary revised print-out & telephonic conference w/HM re same
>
> NO CHARGE

J.A. 91. Additionally, "[d]uring 2011 and early 2012," Houshang allegedly called Defendant approximately every three months to discuss the 2009 Litigation and another matter. *Id.* During these conversations, Houshang asked "when he would have an opportunity to go before a judge," and "Defendant responded generally that he was working on it." *Id.*

On May 7, 2012, the Interdonatos issued a Notice of Foreclosure against the Trust (to which the Momenians had "[a]t some time prior to May 7, 2012" conveyed real estate purchased with the Note) claiming a balance of $238,383.44. J.A. 90-91. By June 14, 2012, Plaintiffs hired new counsel to represent them against the Interdonatos. Their new attorney filed a motion that day to stop the foreclosure and to challenge the amounts the Interdonatos claimed were due. On November 2, 2012, Plaintiffs settled the foreclosure litigation by paying $85,000 for full satisfaction of the Note. On January 31, 2013, Houshang recorded a conversation with Defendant that Plaintiffs argue confirms both that Defendant did not explain that all claims were fully dismissed by the 2010 settlement, and that Defendant told Houshang his claims could continue to be litigated after the 2010 settlement. J.A. 91-92.

Until November 2012, the Momenians continued to make monthly payments of $1,300 pursuant to the Note Modification Agreement, totaling $197,600. By May 2012, Plaintiffs believed the Note was paid off and that, "if anything, they had overpaid." J.A. 90.

Plaintiffs filed this action in D.C. Superior Court on May 6, 2015, alleging legal malpractice and breach of fiduciary duty arising from Defendant's advice to settle the 2009 Litigation, his failure to hire an accountant during the 2009 Litigation, and

his alleged failure to explain that the October 2010 praecipe would result in full and final release of all Plaintiffs' claims.

Defendant removed to federal court and moved to dismiss under Rule 12(b)(6). Defendant argued the action was untimely because the plain text of the praecipe dismissing the 2009 Litigation "with prejudice" gave Plaintiffs notice of any claims arising from dismissal of the entire action, and because Plaintiffs knew of Defendant's failure to hire an accountant before October 12, 2010. J.A. 64. Defendant further argued Plaintiffs had not pled proximate cause because the 2009 Litigation had no merit and, therefore, the 2010 settlement could not have caused Plaintiffs harm. J.A. 65-66.

Plaintiffs argued that the limitations period did not commence until May 7, 2012, when they received the foreclosure notice.[1] J.A. 60. Alternatively, Plaintiffs argued that determining when one reasonably learns of injury caused by a fiduciary's wrongdoing is a "question of fact that cannot be resolved by summary judgment," and that Defendant's failure to explain "that a dismissal with prejudice meant that there would be no further litigation" lulled Plaintiffs "into a false sense of security." J.A. 59, 60. Plaintiffs also argued that their 2009 Litigation claims were meritorious, and that Defendant is estopped from claiming otherwise because he filed the lawsuit himself. J.A. 56-57.

The District Court granted Defendant's motion to dismiss the complaint as time barred but granted Plaintiffs leave to amend. The court rejected Defendant's argument that the praecipe's plain language of "dismissal with prejudice" put Plaintiffs on actual notice of their claims because, as a layperson, Houshang was entitled to a "reasonable period of

---

[1] Plaintiffs' position would render this action timely by one day.

time" after the alleged malpractice to discover his claims. *Momenian v. Davidson*, No. 15-cv-828, 2016 WL 259641, at *5 (D.D.C. Jan. 21, 2016) (quotation marks omitted). However, the District Court concluded this "reasonable period" elapsed before the May 6, 2012 critical date. The complaint stated that by May 2012 Plaintiffs already thought they overpaid the Note; therefore, the court concluded, they were aware of their injury before the May 7, 2012 foreclosure notice. The District Court further concluded that exercise of reasonable diligence during the eighteen months between the alleged malpractice on October 12, 2010 and May 6, 2012 – such as checking public court records, consulting with Defendant, or consulting with a different lawyer – would have put Plaintiffs on notice of Defendant's wrongdoing and its causation of injury "well before" May 6, 2012. *Id.* In addition, Defendant's failure to hire an accountant was admittedly known to Plaintiffs before the October 12, 2010 settlement.

Plaintiffs filed an amended complaint on February 10, 2016, adding an argument that the limitations period was tolled by Defendant allegedly continuing to represent them in litigation against the Interdonatos after the October 12, 2010 settlement. New factual allegations included the May 2011 billing statement, Houshang's trimonthly phone conversations with Defendant beginning in 2011 and ending in early 2012 in which Houshang allegedly asked "when he would have an opportunity to go before a judge," and the transcript of the 2013 conversation between Houshang and Defendant in which they discussed the 2009 Litigation. *Id.* Defendant renewed his motion to dismiss on the same grounds as his first motion, including the statute of limitations.

The District Court again dismissed the complaint as untimely, this time with prejudice. *Momenian v. Davidson*, 209 F. Supp. 3d 288 (D.D.C. 2016). The court found

Houshang's phone conversations with Defendant insufficient to constitute reasonable diligence, concluding that a "reasonable" plaintiff would have done more in the face of no action over eighteen months, and that further investigation would have revealed Defendant's alleged malpractice and its relationship to Plaintiffs' injury. In any event, the court reasoned, the amended complaint stated that the calls ended in "early 2012," which preceded the May 6, 2012 critical date. *Id.* at 298-99.

Plaintiffs filed a notice of appeal on October 27, 2016. The parties renewed the arguments raised below regarding accrual of Plaintiffs' claims and tolling of the statute of limitations, and they again briefed Defendant's alternative argument for dismissal, not reached by the District Court, that Plaintiffs failed to state a claim for legal malpractice on the merits.

## II.

This Court reviews *de novo* the dismissal of a complaint for failure to state a claim, accepting a plaintiff's factual allegations as true and drawing all reasonable inferences in a plaintiff's favor. *Vila v. Inter-Am. Inv., Corp.*, 570 F.3d 274, 278 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint will be dismissed under Rule 12(b)(6) as "conclusively time-barred" if "a trial court 'determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (quoting *Jarrell v. U.S. Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985)); *see also Jones v. Rogers Mem'l Hosp.*, 442 F.2d 773, 775 (D.C. Cir. 1971) ("The [statute-of-limitations] defense

9

may be raised by a motion to dismiss under Rule 12(b)(6).”). Yet “courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint” because “statute of limitations issues often depend on contested questions of fact.” *Firestone*, 76 F.3d at 1209; *see also Jones*, 442 F.2d at 775 (“[T]he complaint cannot be dismissed [as conclusively time barred] unless it appears beyond doubt that the plaintiff can prove no state of facts in support of his claim that would entitle him to relief.”).

The limitations period for Plaintiffs’ claims is three years from the date they accrued. D.C. Code § 12-301(8) (2009); *Duggan v. Keto*, 554 A.2d 1126, 1143-44 (D.C. 1989) (applying the three-year limitations period to legal-malpractice and fiduciary-duty claims). Legal-malpractice claims in the District of Columbia generally accrue the moment a plaintiff suffers injury. *Byers v. Burleson*, 713 F.2d 856, 859-60 (D.C. Cir. 1983).

Where an injury is by its nature not readily apparent, D.C. courts apply a more forgiving “discovery rule” under which a claim accrues only if a plaintiff has actual or inquiry notice of a cause of action, regardless of when the injury occurred. *Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996); *Bussineau v. President & Dirs. of Georgetown Coll.*, 518 A.2d 423, 425 (D.C. 1986); *see also Doe v. Medlantic Health Care Grp., Inc.*, 814 A.2d 939, 945 (D.C. 2003) (“[A] cause of action accrues . . . when the plaintiff is deemed to be on inquiry notice, ‘because if she had met her duty to act reasonably under the circumstances in investigating matters affecting her affairs, such an investigation, if conducted, would have led to actual notice.’” (quoting *Diamond*, 680 A.2d at 372)). Under the discovery rule, “a cause of action accrues when a plaintiff knew or should have known through the exercise of reasonable diligence of: (1) the existence of the injury, (2) its cause in fact,

and (3) some evidence of wrongdoing." *Jung v. Mundy, Holt & Mance, P.C.*, 372 F.3d 429, 433 (D.C. Cir. 2004) (quotation marks omitted).

"Inquiry notice extends to 'that [knowledge] which a plaintiff would have possessed after due investigation'" as measured by an objective standard of reasonable diligence under the circumstances. *BDO Seidman, LLP v. Morgan, Lewis & Bockius LLP*, 89 A.3d 492, 500 (D.C. 2014) (quoting *Diamond*, 680 A.2d at 372); *Doe*, 814 A.2d at 958 ("[T]he standards by which the discovery rule is applied are objective."). "The critical question . . . is whether the plaintiff exercised reasonable diligence under the circumstances in acting or failing to act on whatever information was available to him." *Ray v. Queen*, 747 A.2d 1137, 1141-42 (D.C. 2000). The analysis focuses "on the plaintiff's diligence in discovering the cause of action, rather than the defendant's misconduct . . . given the purpose of statutes of limitation to protect defendants from stale claims." *BDO Seidman*, 89 A.3d at 501 (quotation marks and alteration omitted). A plaintiff's duty to investigate with reasonable diligence complements the discovery rule's permissiveness toward malpractice claims, protecting the values of fairness to defendants, preservation of evidence, and judicial efficiency that underlie statutes of limitation. *See Diamond*, 680 A.2d at 378-79 ("The passage of time makes it just as difficult for the defendant to prove the plaintiff's knowledge and lack of diligence in bringing a claim as it does to disprove meritless allegations. We do not think it appropriate to protect those careless of their rights at the expense of the right of the party accused to defend herself.").

The discovery rule's objective reasonable-diligence standard applies regardless of whether a plaintiff and defendant are in a fiduciary relationship, *id.* at 376, and an attorney-client relationship does not preclude the accrual of a malpractice

claim under the discovery rule, *e.g.*, *BDO Seidman*, 89 A.3d at 501. *See also Ray*, 747 A.2d at 1141 ("Inquiry notice is the applicable standard even . . . in a legal malpractice case.").

However, the existence and nature of a fiduciary relationship are important aspects of the relevant circumstances a court assesses to determine whether a plaintiff exercised reasonable diligence investigating claims against her fiduciary. *BDO Seidman*, 89 A.3d at 500 ("The analysis is highly fact-bound and requires an evaluation of all of the circumstances, including the conduct and misrepresentations of the defendant, the reasonableness of plaintiff's reliance on the defendant, and the existence of a fiduciary relationship between the parties." (quotation marks omitted)). A fiduciary relationship between a plaintiff and defendant may "reduce the significance of[] any lack of diligence on [a plaintiff's] part," and courts have given heightened protection to a client's reliance upon her lawyer's advice and representations when evaluating a plaintiff's reasonable diligence investigating malpractice claims. *See Drake v. McNair*, 993 A.2d 607, 620 (D.C. 2010); *Ray*, 747 A.2d at 1142 (collecting cases).

## III.

Although diversity of the parties' citizenship was not initially briefed, this Court has an independent obligation to determine our subject matter jurisdiction. *Am. Library Ass'n v. FCC*, 401 F.3d 489, 492 (D.C. Cir. 2005). Citizenship is determined by domicile, which is in turn determined by "physical presence in a state, and intent to remain there for an unspecified or indefinite period of time." *Prakash v. Am. Univ.*, 727 F.2d 1174, 1180 (D.C. Cir. 1984). Pleading a party's "*residence* alone is insufficient to establish the *citizenship* necessary for diversity jurisdiction." *Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 906 (D.C. Cir.

2006) (citing *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 n.20 (D.C. Cir. 1983)).

Defendant's Notice of Removal alleged "complete diversity of citizenship among the necessary and properly named parties" and that "Mr. Davidson is not a citizen of Washington, D.C.," but alleged only that "Plaintiffs are *residents* of the State of Maryland" and that "Mr. Davidson is an adult *resident* of the Commonwealth of Virginia." J.A. 44 (emphasis added). Upon review of the entire record, it did not, at the time of argument, support a determination of "the *citizenship* of each and every party to the action." *Naartex*, 722 F.2d at 792 (emphasis added).

We ordered post-argument supplemental briefing and directed Defendant to submit amended allegations of jurisdiction pursuant to 28 U.S.C. § 1653. Defendant's amended pleadings allege he lives and intends to remain indefinitely in Virginia, and that the Momenians live in Maryland and, to Defendant's knowledge, have no intention to move out of Maryland. Plaintiffs' supplemental brief states Appellants are citizens of Maryland, and Plaintiffs did not dispute Defendant's amended jurisdictional allegations. Defendant's amended pleadings do not allege the Trust's citizenship; however, the citizenship of a traditional trust is the citizenship of its trustees, and the operative complaint alleges the trustee is Houshang. Together with the record, the amended pleadings are sufficient to determine that the Trust, a traditional *inter vivos* trust, is also a Maryland citizen. *See Wang by & through Wong v. New Mighty U.S. Trust*, 843 F.3d 487, 494 (D.C. Cir. 2016) ("[T]he citizenship of a traditional trust depends only on the trustees' citizenship."); *D.C. ex rel. Am. Combustion, Inc. v. Transamerica Ins. Co.*, 797 F.2d 1041, 1044 (D.C. Cir. 1986) ("[T]he whole record . . . may be looked to, for the purpose of curing a defective averment of

citizenship[.]" (quotation marks omitted)). We therefore conclude we have subject matter jurisdiction over this matter.[2]

**IV.**

Plaintiffs' malpractice claim is untimely if they knew, or with reasonable diligence would have known, of the alleged overpayment of the Note, some evidence of Defendant's alleged malpractice, and its causal relationship to their injury before May 6, 2012. *See Jung*, 372 F.3d at 433. The question we face on Defendant's motion to dismiss is whether it is plausible that Houshang's calls to Defendant every three months for a year and a half constituted reasonable diligence under the circumstances, where those circumstances included the parties' attorney-client relationship and Defendant's repeated assurances that he was "working on" the 2009 Litigation.

We conclude Plaintiffs' allegations plausibly demonstrate reasonable diligence under the circumstances here. Assuming the posture of review on a motion to dismiss, we are not persuaded that calling one's lawyer every three months to check in on a case, and relying on the lawyer's assurances that he was "working on it," is insufficient to fulfill a plaintiff's duty to investigate her affairs. *See Ray*, 747 A.2d at 1142. It is plausible that a reasonable person would rely on an attorney's regular assurances that he was working on a case and

---

[2] Defendant argues all three plaintiffs lack standing to bring this suit because the Trust, not the Momenians, paid the $85,000 settlement to the Interdonatos, and because the Momenians, not the Trust, were Defendant's clients. This argument fails. The damages claimed include overpayment of the Note via the $1,300 monthly payments, which were made by the Momenians themselves, and "only one plaintiff must have standing." *In re Navy Chaplaincy*, 697 F.3d 1171, 1178 (D.C. Cir. 2012).

feel no need to investigate further, at least not after only eighteen months. Indeed, it is common knowledge that litigation often lasts for years. *See Iqbal*, 556 U.S. at 679 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief . . . requir[es] the reviewing court to draw on its judicial experience and common sense." (citations omitted)).[3]

Defendant argues Plaintiffs' failure to do more than call every three months was unreasonable given their ready access to public information, such as court records, that would have alerted them the 2009 Litigation was closed. But this matter differs in a material respect from statute-of-limitations cases where D.C. courts required plaintiffs to check public records: Here, Plaintiffs relied on reassurances from their lawyer and fiduciary. *See Ray*, 747 A.2d at 1142 ("[C]ases from this jurisdiction, as well as those decided by other courts, 'have long taken into account the confidential or fiducial relationship between the plaintiff and defendant.'" (quoting *Diamond*, 680 A.2d at 376)); *cf. Drake*, 993 A.2d at 618-19 (concluding a plaintiff was on inquiry notice of her fraud claims against non-fiduciaries due to information available in public records). Not only does the existence of a fiduciary relationship "reduce the significance of[] any lack of diligence on [a plaintiff's] part," D.C. courts have long safeguarded a client's trust in her attorney when evaluating timeliness defenses. *Drake*, 993

---

[3] Defendant argues that even if Houshang's phone calls and reliance on Defendant's assurances delayed the accrual of Plaintiffs' claims, these calls ceased in "early 2012," which precedes May 6, 2012. But Plaintiffs' claims did not accrue the moment Houshang ended his final call; rather, they accrued once it was no longer reasonable for Plaintiffs to rely on Defendant's latest statement that he was "working on" their case. Construing "early 2012" in favor of Plaintiffs, it is plausible Plaintiffs reasonably relied on Defendant's assurances for at least several months after the final phone call and, therefore, beyond May 6, 2012.

15

A.2d at 620; *see also, e.g., Ray*, 747 A.2d at 1142 (citing with approval the statement in *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988), that a "client must feel free to rely on his attorney's advice. Facts which might ordinarily require investigation likely may not excite suspicion where a fiduciary relationship is involved."). Even if reviewing public records would have put Plaintiffs on notice of their claims prior to May 6, 2012, we cannot conclude, under these circumstances and on a motion to dismiss, that "reasonable diligence" required Plaintiffs to investigate further.

We emphasize that our decision applies *Iqbal*'s plausibility standard, and we note the thoughtfulness and care with which the District Court analyzed the timeliness of Plaintiffs' claims. Despite the District Court's thoroughness, however, we cannot agree that Plaintiffs' claims are conclusively time barred under the standard of review on a motion to dismiss.

Assuming facts pleaded in the complaint to be true, we conclude it is plausible that Plaintiffs' malpractice claim did not accrue prior to May 6, 2012. We therefore need not reach Plaintiffs' arguments that the statute of limitations was tolled by the lulling or continuous-representation doctrines.

Defendant seeks affirmance on the alternative basis, not reached below, that Plaintiffs fail to state a claim even if the action were timely. While "an appellate court can affirm . . . even if on different grounds than those assigned in the decision under review," *Danielson v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1230 (D.C. Cir. 1991), we do not do so here. *See Scandinavian Satellite Sys., AS v. Prime TV Ltd.*, 291 F.3d 839, 847 (D.C. Cir. 2002) (declining to reach alternative grounds for dismissal not passed upon below and remanding for resolution by the district court). The alleged

structure and terms of the many real-estate transactions involving the Momenians and Interdonatos are confusing, somewhat contradictory, and sufficiently unclear that we find it appropriate for the District Court to consider the alternative grounds for dismissal in the first instance, since it has various means at its disposal to get to the bottom of the allegations. *See, e.g.*, 2 J. Moore et al., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed. 2017) (explaining that a court can *sua sponte* order a plaintiff to submit a more definite statement); *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367-68 (11th Cir. 1996) ("Determining precisely what the plaintiff is contending is a matter best left to the district court – either by requiring [Plaintiff] to replead his case or by requiring all parties to state on the record the theories under which they are proceeding and the facts that support their theories.").

\* \* \*

For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.