**Marguerite WOODRUFF, (No. 86–724), William L. Robinson, (No. 86–725), Appellants,**

v.

**C.K. McCONKEY, Appellee.**

Nos. 86–724, 86–725.

District of Columbia Court of Appeals.

Argued Jan. 7, 1987.

Decided April 21, 1987.

Margaret A. Beller, with whom Carolyn R. Just, Washington, D.C., was on the brief, for appellants.

Jay S. Weiss, Washington, D.C., for appellee.

Before NEBEKER, BELSON, and ROGERS, Associate Judges.

ROGERS, Associate Judge:

Appellants appeal from grants of summary judgment on the ground appellants' causes of action against an unlicensed home improvement contractor were barred by the statute of limitations. Appellant Marguerite Woodruff filed a complaint on September 27, 1985, seeking the return of $6,862.00 paid during 1982 pursuant to an incompleted home improvement contract entered on April 7, 1982 with the appellee C.K. McConkey. Appellant William L. Robinson filed a similar action on October 7, 1985, against McConkey seeking the return of advances of $7,073.00 paid on or before February 24, 1983 pursuant to a home improvement contract entered on November 11, 1982. Both appellants contended that their contracts were void *ab initio*, under D.C.Code §§ 2–501, –502 (1986 Supp.), and the regulations promulgated thereunder, 16 DCMR § 800.1 (1983), because McConkey was not licensed as a home improvement contractor in the District of Columbia when he entered the contracts requiring advance payment; they sought summary judgment when McConkey admitted his unlicensed status. McConkey filed oppositions to the motions and cross-motions for summary judgment on the ground that the general three-year

statute of limitations, D.C.Code § 12–301(8), had run on both claims. Appellants did not respond to the cross-motions. The trial judge denied appellants' motions, granted McConkey's cross-motion, and entered a judgment for him against both appellants.

On appeal appellants contend that the trial judge erred because: (1) no statute of limitations applied to their claims; (2) alternatively, any applicable limitations period would have started to run only when a breach occurred; and (3) McConkey's failure to obtain a license was a fraudulent concealment that tolled the running of the limitations period. We hold that appellants' causes of action based on the licensing statute arose when payments were made, and are subject to the general three-year statute of limitations, § 12–301(8), for each payment made. Because Robinson's last payment was made more than three years before he filed suit, we affirm the grant of summary judgment to McConkey. However, because the record does not reveal whether Woodruff's payment or payments during 1982 were made more than three years before she filed suit, we reverse the grant of summary judgment and remand her case to the trial court.

I

Appellants' first contention, that no statute of limitations applies because the contracts were void *ab initio*, is meritless. Assuming that the contracts were void *ab initio*,[1] a three-year statute of limitations would apply. The provisions for the licensing of home improvement contractors do not contain their own statute of limitations or provide that no statute of limitations shall apply. *See* D.C.Code § 2–501 *et seq.* (1981 & 1986 Supp.); 16 DCMR ch. 8 (1983). Therefore, the general limitations statute, § 12–301(8), would ordinarily apply. It provides that "actions ... for which a limita-

---

1. This court has repeatedly held that a contract with a contractor who is illegally unlicensed is void and unenforceable. *Jackson v. Holder,* 495 A.2d 746 (D.C.1985) (no Master Plumber's License under 5C–2 DCRR § 115–1 (1972)); *Family Construction v. District of Columbia Department of Consumer and Regulatory Affairs,* 484

A.2d 250, 254 (D.C.1984) (failure of home improvement contractor selling windows to obtain license as "retail seller"); *Erwin v. Craft,* 452 A.2d 971, 972 (D.C.1982) (per curiam) (failure to obtain home improvement contractor's license); *Bathroom Design Institute v. Parker,* 317 A.2d 526 (D.C.1974) (same).

tion is not otherwise specially prescribed" shall not be brought after the expiration of three years from "the time the right to maintain the action accrues." Appellants' lawsuits are undeniably "actions"; hence § 12–301(8) applies. Alternatively, an action for the refund of monies paid pursuant to a void contract is in the nature of a suit in contract and would be treated under the same statute of limitations period. Section 12–301(7) sets the limitations period for an action based "on a simple contract, express or implied" at three years.

■ If the discovery rule, *see* Part III *infra*, does not apply to appellants' causes of action, and in the absence of fraudulent concealment, the three year statute of limitations would bar all of Robinson's claim and perhaps all of Woodruff's claim. Section 8001.1 of the Home Improvement Licensing Regulations provides that:

No person shall *require* or *accept* any payment under a home improvement contract in advance of the full completion of all the work required to be performed by such contract, unless such person is licensed as a home improvement contractor or as a licensed salesman employed by such licensed contractor. [Emphasis supplied.]

Although a violation of the regulation occurs when the contractor enters a home improvement contract which requires advance payment, the cause of action cannot accrue, *Weisberg v. Williams, Connolly & Califano*, 390 A.2d 992 (D.C.1978) (ordinarily when injury occurs), until the homeowner has made a payment; until that time there is no money to recover, and hence no injury or cause of action. Any other interpretation would lead to the untenable result that a homeowner who makes a payment more than three years from the making of the contract would be barred from any recovery.

■ Robinson alleges in his verified complaint that he made all of his payments on or before February 24, 1982. Attached to his complaint is an exhibit of copies of checks made payable to McConkey. Robinson's Statement of Material Facts Not in Dispute, filed pursuant to Super.Ct.Civ.R.

12–I(k), in support of his motion for summary judgment, Super.Ct.Civ.R. 56, is consistent with the amounts and dates of the four checks. Therefore, he is barred from attempting a recovery of any of this money because he filed his action more than three years later, on October 7, 1985.

■ Woodruff, on the other hand, alleges in her Rule 12–I(k) Statement of Material Facts Not in Dispute only that she completed full payment to McConkey sometime during 1982. The contract attached to her verified complaint called for eighteen monthly payments, beginning March 7, 1982. A handwritten notation on the contract form indicates that a downpayment of $2,000.00 was made. Because Woodruff filed suit on September 27, 1985, she is entitled to seek recovery of any payments made after September 27, 1982. Her failure to raise this issue in response to McConkey's motion for summary judgment is not fatal, *see Cloverleaf Standardbred Owners Association v. National Bank of Washington*, 512 A.2d 299 (D.C.1986) (requiring adequate pleadings), because the trial judge is required on a summary judgment motion to ascertain whether the movant is entitled to judgment as a matter of law. *See Williams v. Gerstenfeld*, 514 A.2d 1172, 1176–77 (D.C.1986). Inferences from subsidiary facts are to be resolved against the moving party. *Spellman v. American Security Bank*, 504 A.2d 1119, 1122 (D.C.1986) (per curiam); *Willis v. Cheek*, 387 A.2d 716, 719 (D.C.1978) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)). Although Woodruff has not challenged the trial judge's action on this basis, her most relevant argument being that the limitations period did not commence until the breach of contract occurred, this court must apply the same standard as the trial court in reviewing a motion for summary judgment. *Spellman v. American Security Bank, supra*, 504 A.2d at 1122 and cases cited therein. McConkey did not claim in his Rule 12–I(k) statement that all of Woodruff's payments were made before September 27, 1982. Accordingly, since the record does not clearly

demonstrate that McConkey was entitled to judgment as a matter of law, summary judgment against Woodruff is inappropriate. *Id.*

■ The issue remains whether the occurrence of payments after September 27, 1982 would entitle Woodruff to recover only those payments or all of the money paid, regardless of when the payment was actually made. Because the cause of action is based on a statutory violation, and not on the breach of an installment or indivisible contract, the critical question is the date of the statutory violation. The first violation occurred when McConkey entered the contract, but, as discussed above, the cause of action could not have accrued at this point. Instead, it accrued upon each subsequent violation of the statute, namely the acceptance of an advance payment by McConkey. As soon as Woodruff made a payment, another violation of the statute occurred and she immediately could have brought an action to recover those funds. Acceptance of another advance payment by McConkey would constitute another violation of the statute and again entitle her to bring an action to recover that money. Woodruff has the full three-year period in which to bring an action to recover the first payment; there is no sound rationale for extending that period simply because of the mere fortuity that a second payment, a second statutory violation, has occurred. The punitive purposes of the substantive statute, *see supra* note 1, do not affect the analysis and application of the separate and independent statute of limitations, which serve separate, important purposes. *See, e.g., Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1202 (D.C.1984); *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). Woodruff's action is for a refund of monies paid; the injury occurs when that money is actually paid. Accordingly, the statute of limitations runs separately for each payment, and Woodruff is entitled to bring an action to recover only those monies that have been paid after September 27, 1982.

**II**

■ Appellants next contend that, assuming the existence of a contract, the limitations period did not begin to run until after the breach occurred. They claim that the work done by the appellee was incomplete and unsatisfactory and that "a new cause of action would have accrued ... each time the rain came down through the uncompleted roof." [2]

This point is irrelevant, however, to a cause of action that is based solely on the unlicensed status of the contractor and not on deficient construction. Moreover, appellants have not raised a claim for breach of contract; they have only requested a refund of money. Although they belatedly maintain in their reply brief that the "defective repairs which were never completed is at the very heart of these actions," our review of the record and the reply brief reveals that appellants have never asserted a claim based on a breach of contract or on deficiencies in the work performed. The complaints contained only the factual statement that, "Many repairs which Defendant made on Plaintiff's house were defective, and it is necessary that Plaintiff incur the expense of having these repairs done over, to stop the consistent leaking that allows water to come into the top floor of her [or his] home." The only legal claim was that the contracts were void *ab initio* and no reference to a breach or a specific request for damages were made. Appellants did not file a motion to amend their pleadings, and their summary judgment motions did not refer to contractual damages. When the trial judge granted McConkey's cross-motions, it was incumbent upon appellants at least to file a motion to reconsider if they believed that a separate claim had mistakenly been ignored. Finally, we do not read appellants' briefs on appeal as taking the position that a separate claim has been raised; their only contention is that McConkey's unlicensed status would

---

**2.** This statement is erroneous. Even when the discovery rule applies, *see infra* Part III, the cause of action accrues when the plaintiff dis-

covers the injury, which would presumably be at the first rainfall.

not have been discovered had the work not been defective.[3]

## III

■ Appellants also rely on *Ehrenhaft, supra,* 483 A.2d 1192, and thus, arguably, raise the issue whether the discovery rule should apply to claims based on the unlicensed status of the contractor. Under this rule, a cause of action does not accrue until the plaintiff knows or "by exercise of due diligence should know (1) of the injury, (2) its cause in fact and (3) of some evidence of wrongdoing." *Bussineau v. President and Directors of Georgetown College,* 518 A.2d 423, 424 (D.C.1986).

The discovery rule thus far has been applied by this court only in cases involving professional negligence or malpractice, *see Burns v. Bell,* 409 A.2d 614 (D.C.1979) (medical malpractice); *Weisberg, supra,* 390 A.2d 992 (legal malpractice); *Ehrenhaft, supra,* 483 A.2d 1198–1205 (architectural and construction negligence), regardless of whether the action is expressed in terms of contract or tort. *Ehrenhaft, supra,* 483 A.2d at 1198 & n. 11 (unnecessary to reach issue whether contractual and tort claims accrue at same time). An examination of the specific factors set forth by the court for defining the applicability of the discovery rule, *id.* at 1202–03, leads us to conclude that it should not be extended to the facts of the instant case.

The first factor is the justifiable reliance by consumers on the professional skills of those hired to perform the work. In this case, the alleged deficiency is the failure to obtain a license, not the failure to perform professional services properly. A contractor is not a professional because of any special competence in the procedures for obtaining a license, or in determining the existence of a license. Clients have the ability to determine the possession of a license without hiring another professional. Appellants' contention that consumers should not be under a duty to verify licens-

ing addresses only the secondary question of the outcome in this case if the discovery rule applied and not the prior question whether it should apply. That an ordinary layperson could have detected the absence of a license is critical to this threshold question.

The second factor is the latency of the deficiency. In discovery rule cases, the actual injury manifests itself only years after the negligent act. The injury to the plaintiff asserting the lack of a license occurs at the signing of the contract and remains the same over the years. Admittedly, such a plaintiff might have a better reason to investigate the possession of a license if construction defects later manifest themselves, but the failure to obtain a license does not necessarily cause this injury. The statutory "injury" upon which a claim based on §§ 2–501, –502, is brought is the failure to obtain a license and not negligent workmanship.

Third, the court balances the plaintiff's interest in having the protection of the statute against the possible prejudice to the defendant. At first blush, this factor seems to favor the plaintiff because the evidence of the only relevant facts, the attempted formation of a contract and the possession of a license, is simple and unlikely to be substantially affected by time to the detriment of the defendant. On the other hand, while necessity and convenience are easily the major justifications for civil statutes of limitations, they also "represent a pervasive legislative judgment ... that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.'" *Kubrick, supra,* 444 U.S. at 117, 100 S.Ct. at 356–57. In the case of home improvement licensing, application of the discovery rule could allow homeowners who have had repair work satisfactorily performed to file lawsuits many years after completion of the work when they discover the violation of the licensing statute. Under District of Columbia law, defendant contractors are not entitled to an

---

3. Absent any time bar or considerations of collateral estoppel, appellants may remain free to commence an action for damages. *But see* RESTATEMENT (SECOND) OF JUDGMENTS § 24 comments a

and c, at 197, 199 (1982 ed.). This court has not been advised as to the relevant dates for purposes of applying the discovery rule.

offset on a *quantum meruit* theory. *Bathroom Design Institute, supra* note 1, 317 A.2d at 528. In addition, homeowners who have discovered serious deficiencies, and whose resulting investigation reveals that the contractor was unlicensed, will still have the opportunity to be made whole by bringing a suit for damages based on the deficiencies themselves. *See Ehrenhaft, supra* (discovery rule applies).

Fourth and finally, the court will consider the interest in judicial economy. This factor militates strongly in favor of the defendant for the reasons stated in the preceding paragraph, and because of the court's preference to adjudicate more timely complaints.

## IV

■ Finally, appellants contend, apparently for the first time on appeal, that "the three year statute does not run if there is fraud. [McConkey's] failure to obtain a valid license in the District of Columbia in reality amounted to fraudulent concealment on appellant[s]." [4] The doctrine of fraudulent concealment applies, however, only when the defendant does "something of an affirmative nature designed to prevent discovery of the cause of action." *William J. Davis, Inc. v. Young*, 412 A.2d 1187, 1191, 1192 (D.C.1980) (failure to disclose not enough); *see also Estate of Chappelle v. Sanders*, 442 A.2d 157 (D.C.1982) (concealment of identity not a concealment of cause of action); *Bailey v. Greenberg*, 516 A.2d 934 (D.C.1986) (lulling); *Richards v. Mileski*, 213 U.S. App.D.C. 220, 225, 662 F.2d 65, 70 (1981) (applying District of Columbia law; requiring affirmative act or misrepresentation). In the instant case, the failure to obtain a license is the basis of

the claims, and not an act of fraudulent concealment. Appellants point to no other acts that would toll the statute.[5]

■ In any event, this issue is not properly before the court. *Morski v. Murphy*, 85 A.2d 806, 807–08 (D.C.1952). While a trial judge considering a motion for summary judgment is under an obligation to determine whether there are any material issues of fact, *Spellman v. American Security Bank, supra*, 504 A.2d at 1122, material factual disputes must be pleaded in accordance with Super.Ct.Civ.R. 12–I(k) and R. 56(e). *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C.1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978). Although this court applies the same standard on appeal, appellants' argument was not preserved for appeal because fraud must be particularly pleaded and established by clear and convincing evidence. *Id.* at 59; Super.Ct.Civ.R. 9(b) ("circumstances constituting fraud or mistake shall be stated with particularity"). Appellants did not allege that they were affirmatively misled or cite facts that would have allowed the court to infer that fraud might have occurred.

Accordingly, the judgment is affirmed as to appellant Robinson, but reversed as to appellant Woodruff, whose case is remanded to the trial court for further proceedings.

*Affirmed in part and reversed and remanded in part.*

Bonded—Licensed—Insured
3824 34th St. Mt. Rainier, Md. 20822

---

4. Actions for fraud must be brought within three years from the time the fraud either is discovered or should have been discovered in the exercise of due diligence. *King v. Kitchen Magic*, 391 A.2d 1184, 1186 (D.C.1978) (exception to § 12–301 for fraud). Appellants have not raised the issue whether fraud occurred in the making of the contract.

5. McConkey's form contract, signed by both appellants, contains the heading:

C.K. McCONKEY
"We Build Beauty"

Elsewhere the form contains the characters LI. 1876. Arguably, these representations constituted an act of fraudulent concealment upon which appellants might have relied in forming the belief that there was no need to check the District of Columbia license themselves. On the other hand, they might have believed that the form only purported to show licensing in Maryland. Appellants have not made these specific claims either below or on appeal.