# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 1, 2018         Decided April 26, 2019

No. 18-7051

COMMONWEALTH LAND TITLE INSURANCE COMPANY,
APPELLANT

v.

KCI TECHNOLOGIES, INC. AND WILES MENSCH CORPORATION,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-01070)

———

*Joseph T. Nah* argued the cause for appellant. With him on the briefs was *Marianne R. Casserly*.

*Howard S. Stevens* argued the cause for appellee KCI Technologies, Inc. With him on the brief was *Meighan G. Burton*.

*Jonathan C. Shoemaker* argued the cause for appellee Wiles Mensch Corporation. With him on the brief was *Dalene A. Radcliffe*.

Before: GARLAND, *Chief Judge*, and TATEL and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

On March 23, 2017, Appellant Commonwealth Land Title Insurance Company filed a seven-count complaint against two land surveyors: Appellees KCI Technologies, Inc. ("KCI") and Wiles Mensch Corporation ("WMC"). Appellant's complaint brings breach of contract and negligence claims against KCI and WMC in connection with four allegedly defective surveys that the two entities delivered to ICG 16th Street Associates ("ICG"). ICG, a non-party to this litigation, is a development group to whom Appellant issued, and made a loss payment under, a title insurance policy. The gravamen of the complaint is that KCI's and WMC's surveys failed to notice the full size of a twelve-inch encroachment – which ICG discovered on March 24, 2014 – spanning from an abutting building onto ICG's property.

KCI and WMC each moved to dismiss pursuant to the District of Columbia's three-year statute of limitations, and the District Court dismissed the complaint, with prejudice, as untimely. The District Court held that Appellant's claims accrued when KCI and WMC delivered the defective surveys to ICG in 2006, 2012, 2013, and 2014. In so holding, the District Court declined to apply D.C.'s so-called "discovery rule," which, in certain cases, tolls the statute of limitations until a plaintiff knew, or in the exercise of reasonable diligence should have known, of the injury, *see Ehrenhaft v. Malcolm Price, Inc.,* 483 A.2d 1192, 1203 (D.C. 1984). The District Court found that ICG and Appellant are sophisticated business entities, and that the 2012 and 2013 surveys put them on notice of the encroachment's existence (just not its precise length).

Appellant argues that this Court should reverse as to the first three counts of the complaint because the District Court erred in dismissing them on statute of limitations grounds

without applying the discovery rule. We agree. The complaint, filed on March 23, 2017, alleges that ICG did not learn that the encroachment was twelve inches – a fact that obstructed its development plan – until March 24, 2014, only after its contractor removed a portion of the property's brick façade. Appellant and ICG, an insurance company and development group respectively, are unsophisticated parties with respect to land surveying, and the complaint alleges that they commissioned four surveys from KCI and WMC for the purpose, *inter alia*, of accurately identifying encroachments. At the motion to dismiss stage, therefore, it cannot conclusively be said that Appellant and ICG failed to exercise reasonable diligence in attempting to discover the encroachment's full size. In turn, it is premature to reject the possibility that Appellant's claims in counts one, two, and three did not accrue, at the earliest, until ICG discovered that the encroachment was twelve inches on March 24, 2014. *See Bregman v. Perles*, 747 F.3d 873, 875-76 (D.C. Cir. 2014) ("[B]ecause statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred.") (quoting *de Csepel v. Republic of Hungary*, 714 F.3d 591, 603 (D.C. Cir. 2013))).

**I.**

The following facts are taken from Appellant's complaint and assumed true for the purpose of reviewing KCI's and WMC's motions to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In 2006, in connection with ICG's plan to purchase and commercially develop a lot ("Property") in D.C., KCI conducted a land title survey ("KCI 2006 Survey"), which included a certification of accuracy made out to ICG, Appellant (ICG's title insurer), and other parties. J.A. 19-20, 49. The KCI

4

2006 Survey failed, entirely, to notice any encroachment upon the Property.

On or about April 12, 2007, in reliance on the KCI 2006 Survey, ICG acquired the Property. At the time of purchase, there were two buildings on the lot; ICG planned to demolish them and construct an office building in their stead. Also on April 12, 2007, and also in reliance on the KCI 2006 Survey, Appellant issued ICG a title insurance policy ("2007 Title Policy").

On December 2, 2012, in connection with its planned development, ICG retained WMC to conduct a boundary, topographic, and utility survey ("WMC 2012 Survey"). It indicated that a party wall – *i.e.* a wall common to two adjoining buildings – existed between the Property and an adjacent building and encroached onto the Property by two to three inches. In 2013, ICG commissioned WMC to conduct a second survey ("WMC 2013 Survey"), which indicated that, in fact, the party wall encroached onto the Property by four inches.[1]

In early 2014, ICG initiated demolition of the existing buildings on the Property. On March 24, 2014, however, the demolition process hit a snag. That day, Oscar Perez, a director of the architectural firm ICG hired, emailed ICG to inform it that the party wall actually encroached onto the Property by twelve inches. Mr. Perez's email (which Appellant included as an exhibit to its complaint, *see* J.A. 22) indicates that Mr. Perez's discovery was possible only because the relevant portion of the building's brick façade had been removed, *id.* at

---

[1] In January 2014, ICG commissioned KCI to conduct a second survey, which also failed to notice the encroachment. None of Appellant's claims on appeal, however, implicates this survey.

131. Upon discovering that the encroachment was twelve inches – as opposed to four inches or less – ICG determined that it could construct the office building as planned only by demolishing the party wall. In addition, ICG was obligated to pay its main tenant $577,000 per month in delay penalties if the tenant was unable to move in by December 2015. Accordingly, shortly after learning that the encroachment was twelve inches, ICG razed the party wall.

On November 17, 2014, ICG submitted a claim to Appellant under the 2007 Title Policy for the cost of the party wall demolition. Appellant accepted coverage and made a loss payment of approximately $1 million to ICG. According to Appellant, as of July 2015, ICG incurred total costs of more than $2.5 million for demolition of the party wall and associated delay penalties. Appellant brings breach of contract and negligence claims against KCI and WMC for the allegedly defective surveys.

## II.

This Court reviews *de novo* the dismissal of a complaint. *Bregman*, 747 F.3d at 875. "[C]ourts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint" because "statute of limitations issues often depend on contested questions of fact." *Firestone v. Firestone*, 76 F.3d 1205, 1208-09 (D.C. Cir. 1996) (internal citations omitted). Indeed, dismissal is appropriate on statute of limitations grounds "only if the complaint on its face is conclusively time-barred." *Bregman*, 747 F.3d at 875-76 (quoting *de Csepel*, 714 F.3d at 603).

In D.C., to maintain a cause of action for breach of contract or negligence, a litigant must bring suit within three years from when a claim "accrues." D.C. CODE § 12-301. The statute, however, does not define "accrues," and the term is therefore

"left to judicial interpretation." *Ehrenhaft*, 483 A.2d at 1198. In negligence, a cause of action accrues when the "injury result[s]." *Hanna v. Fletcher*, 231 F.2d 469, 472 (D.C. Cir. 1956). In contract, the statute of limitations begins to run when the contract is first breached, or when the "defective work is done." *Lieberman v. Aldon Constr. Co.*, 125 A.2d 517, 518 (D.C. 1956).

The D.C. Court of Appeals, however, does not enforce the statute in a draconian fashion. Indeed, a well-established exception is central to this dispute – *i.e.* the discovery rule, under which "accrual occurs . . . when a party knows or by the exercise of reasonable diligence should know: (1) of the injury; (2) the injury's cause in fact; and (3) of some evidence of wrongdoing." *Capitol Place I Assocs. L.P. v. George Hyman Constr. Co.*, 673 A.2d 194, 199 (D.C. 1996), *superseded in part on other grounds by* D.C. CODE § 16-4406(c). The discovery rule is an equitable doctrine; its purpose is to preserve claims in circumstances where the fact of injury or breach "'may not be readily discernible' at the time when actually incurred." *Ehrenhaft*, 483 A.2d at 1202 (quoting *Wilson v. Johns-Manville Sales Corp.*, 684 F.2d 111, 116 (D.C. Cir. 1982)).[2]

The D.C. Court of Appeals twice has examined the discovery rule in the context of deficient design and construction: first, in *Ehrenhaft*, and then in *Capitol Place*.

---

[2] The rule originated in the medical malpractice context; the archetypical case to which it applies is where a surgeon leaves a foreign object in a patient who does not discover it until years after the operation. *See, e.g.*, *Burke v. Wash. Hosp. Ctr.*, 293 F. Supp. 1328, 1333-34 (D.D.C. 1968). Over time, the D.C. Court of Appeals has extended the rule to a variety of contexts, including legal malpractice, personal injury based on products liability, and latent disease. *See Ehrenhaft*, 483 A.2d at 1201-02 (collecting cases).

In *Ehrenhaft*, plaintiff-homeowner hired defendant-contractor to build a new room, which defendant completed in 1977. 483 A.2d at 1194-95. Over the next four years, various issues with the room's plumbing and insulation arose, and defendant made repairs. *Id.* at 1195. During the winter of 1981 to 1982, however, the room's pipes burst, and a separate contractor informed plaintiff that, due to faulty construction, the room's windows functioned improperly, and its heated bench was a burn hazard. *Id.* In 1982, plaintiff sued defendant for breach of contract and negligence. On summary judgment, the trial court held that plaintiff's claims were time-barred because defendant performed the defective work in 1977. *Id.* at 1199. The D.C. Court of Appeals, however, reversed; applying the discovery rule, it held that there was a question of material fact as to whether plaintiff knew or should have known of the defects for which he sought damages – *i.e.* the burst pipe, faulty windows, and heated bench – for more than three years prior to the time he filed the complaint. *Id.* at 1204.

In support of its holding, the *Ehrenhaft* Court reasoned as follows. First, plaintiff was a lay person and therefore justifiably relied on defendant's assurances that the room had been properly constructed and repaired. *Id.* at 1202. Second, the difficulty in identifying deficiencies in construction or design is exacerbated when those deficiencies – like the faulty plumbing, window structure, and electric wiring at issue – are "latent in nature." *Id*. Third, applying the discovery rule in construction disputes does not frustrate the policies underlying the statute of limitations where the injured party does not and, in the exercise of reasonable diligence, could not have known of her claim prior to discovering the defect. *Id.* at 1203. And fourth, in such a case, the interests of judicial economy favor applying the rule, because declining to do so would incentivize plaintiffs to file suit at the drop of a hat in order to preserve potential claims. *Id.*

In *Capitol Place*, the D.C. Court of Appeals assessed for the second time whether the discovery rule applied in a construction dispute. This time, however, the Court held that it did not. There, plaintiff was a principal in a property development firm, and defendant was a construction company that, in 1984, substantially completed an office building for plaintiff. *Capitol Place*, 673 A.2d at 196. From the time of completion, plaintiff complained of numerous defects, including: water leakage causing sopped carpets and mushroom growth; salt residue on and cracking of the building's façade; shifting of the penthouse's façade; and masonry distress and roofing problems. *Id.* at 196, 200. Because of these issues, in 1994 – ten years after defendant completed the building – plaintiff filed a demand for arbitration. *Id.* at 197. On summary judgment, the trial court enjoined plaintiff from proceeding on the ground that its claims were time-barred.

The D.C. Court of Appeals affirmed; it assumed without deciding that the discovery rule is applicable in the commercial (as opposed to residential) construction context but held that it did not apply to the case at bar. *Id.* at 200. The Court explained that, unlike in *Ehrenhaft*, the defects plaintiff complained of were obvious and abundant, and plaintiff was a sophisticated entity that could have promptly discovered their cause without relying on defendant's expertise. *Id.* In so holding, the Court emphasized that the rule does not permit a plaintiff who knows that she has been "significantly injured" to defer institution of suit. *Id.* (quoting *Colbert v. Georgetown Univ.*, 641 A. 2d 469, 473 (D.C. 1994) (en banc)).

Two additional cases warrant mention. In *Woodruff v. McConkey*, 524 A.2d 72 (D.C. 1987), plaintiffs-homeowners sued defendant-contractor, more than three years after he

completed otherwise satisfactory work, because they learned he was unlicensed, *id.* at 724. The D.C. Court of Appeals held that the discovery rule was inapplicable because plaintiffs, with reasonable diligence, could have found out that defendant was unlicensed within three years of hiring him, *see id.* at 727. In *Washington Tennis & Education Foundation, Inc. v. Clark Nexsen, Inc.*, 324 F. Supp. 3d 129 (D.D.C. 2018), plaintiff, a nonprofit, sued defendant, an architectural firm, in 2015 for services rendered in 2011. The District Court declined to apply the discovery rule because the defects plaintiff complained of pertained to design documents delivered to plaintiff in 2011 and were thus "discoverable and correctable" within the limitations period. *Id.* at 140.

Notably, in each case upon which we rely, the question of whether the discovery rule applied was resolved no earlier than on summary judgment. *See Wash. Tennis*, 324 F. Supp. 3d at 131-32; *Capitol Place*, 673 A.2d at 197; *Woodruff*, 524 A.2d at 724; *Ehrenhaft*, 483 A.2d at 1194. Indeed, Appellees, neither in their briefs nor at oral argument, were able to point us to a D.C. case holding that the discovery rule does not apply based solely upon the pleadings. Oral Arg. at 24:25-25:03. But this is unsurprising, since the rule's application, most often, depends on contested questions of fact.

### III.

Before explaining why the District Court erred in dismissing counts one through three as time-barred without applying the discovery rule, we acknowledge that the D.C. Court of Appeals has never explicitly held that the discovery rule is available to a plaintiff in a *commercial* construction dispute. We must, therefore, predict whether the Court would extend the rule to this context. *Earle v. District of Columbia*, 707 F.3d 299, 310 (D.C. Cir. 2012).

We predict that it would. Indeed, in *Capitol Place,* the D.C. Court of Appeals could have foreclosed this possibility. Instead, in a well-reasoned opinion, it assumed without deciding that the rule was available in a commercial construction dispute but explained that it did not apply to the case at bar because plaintiff was a sophisticated party and the defects complained of were obvious and abundant. As such, we infer that – where a plaintiff in a construction dispute clearly lacks the requisite sophistication to identify defects that are latent in nature – the D.C. Court of Appeals would hold that the discovery rule is available to that plaintiff, even in the commercial context.

We turn now to the arguments before us.

In count one, Appellant brings a claim – as assignee of ICG – against WMC for negligent breach of contract, based on the 2012 and 2013 Surveys' failures to notice the encroachment's true size. Appellant argues that the discovery rule applies to this count, and the statute of limitations was thus tolled until March 24, 2014, when ICG learned from Mr. Perez that the encroachment was twelve inches. In response, WMC argues that Appellant lacks standing to bring count one, because it fails to sufficiently allege that ICG assigned its claims against WMC to Appellant. Even assuming Appellant has standing, WMC argues further, count one is time-barred because the statute of limitations began to run when it delivered the defective 2012 Survey to ICG. Moreover, WMC contends, the discovery rule does not apply to this claim because ICG is a sophisticated party and, upon delivery of the 2013 Survey, was on notice that the encroachment was at least four inches and that the 2006 and 2012 Surveys were defective.

Appellant has standing to bring count one because the complaint clearly alleges the existence of an "assignment of

[ICG's] rights and claims to [Appellant]." J.A. 24 ¶ 38. *Information Handling Servs., Inc. v. Defense Automated Printing Servs.*, 338 F.3d 1024, 1029 (D.C. Cir. 2003) (holding that, in reviewing "standing at the dismissal stage, we must . . . accept the factual allegations in the complaint as true") (internal quotation marks and citations omitted). Moreover, the District Court erred in dismissing this count as time-barred without applying the discovery rule because it cannot conclusively be said that ICG failed to exercise reasonable diligence in attempting to discover the full extent of the encroachment. Indeed, at least at the pleading stage, the facts here hew closer to *Ehrenhaft* than *Capitol Place*. ICG may be a sophisticated business entity, but it lacks sophistication in the area of land surveying. Why else would it have commissioned four land surveys? In addition, the defect Appellant complains of – *i.e.* the twelve-inch encroachment – was far from open and obvious; it was so latent that, despite four attempts, the land surveyors were unable to accurately identify it, and it was discovered only after the Property's brick façade was removed. Accordingly, at the motion to dismiss stage, it is premature to reject the possibility that Appellant's claim in count one did not accrue until March 24, 2014, when ICG discovered the encroachment's true size and, as a result, altered its development plan.

The District Court also erred in dismissing counts two and three as time-barred without applying the discovery rule. In these counts, Appellant brings direct claims against KCI, based on the 2006 Survey's failure to notice the encroachment, for negligence and negligent misrepresentation, respectively. Because, unlike its assigned claim against WMC, Appellant brings counts two and three against KCI directly, the relevant inquiry is when Appellant, not ICG, had notice under the discovery rule. Appellant argues that its claims are timely because it discovered that the 2006 Survey was defective only

on September 17, 2014, when ICG tendered its loss claim to Appellant.[3] KCI responds that counts two and three are time-barred because they accrued, at the latest, on April 12, 2007, when Appellant issued ICG the 2007 Title Policy in reliance on the 2006 Survey. Moreover, KCI contends, the discovery rule does not apply because Appellant is a sophisticated entity that, with reasonable diligence, could have learned that the 2006 Survey was defective when the 2012 and 2013 WMC Surveys indicated the encroachment's existence.

For many of the same reasons we applied it to count one, we hold that the discovery rule applies at the pleading stage to counts two and three. Appellant may be a sophisticated insurer, but it is not sophisticated in the field of land surveying, and it reasonably relied on the KCI 2006 Survey – the accuracy of which KCI certified to Appellant – in assuming that the Property was encroachment-free. Moreover, Appellant alleges that it learned that the 2006 Survey was defective only when ICG tendered its loss claim on September 17, 2014, and no separate allegation contradicts this alleged fact. The face of the complaint, therefore, does not permit us to conclusively reject the possibility that Appellant's claims in counts two and three accrued no sooner than September 17, 2014.

---

[3] Appellant argues further that, irrespective of the discovery rule, counts two and three are timely because negligence claims accrue at the time of injury, and Appellant was not injured by the 2006 Survey until December 21, 2015, when it made the related loss payment to ICG. *See* Appellant Br. 27-29 (first citing *Fort Myers Packers Inc. v. Steptoe & Johnson*, 381 F.2d 261, 262 (D.C. Cir. 1967), and then citing *Hanna*, 231 F.2d at 470-72). Because we hold that, at least at the pleading stage, the discovery rule applies to counts two and three, and these claims are timely on that basis, we need not reach this argument.

13

Finally, KCI argues for affirmance on the following alternative grounds: (1) Appellant cannot bring direct claims against it because Appellant has rights only as subrogee and assignee of ICG; (2) Appellant fails to allege that KCI owed it a duty; (3) Appellant cannot allege damages against KCI; and (4) Appellant's claims are barred by the economic loss doctrine, which prohibits recovery for purely economic damages in tort. KCI did not raise the first three arguments below, and we therefore decline to consider them. *See Kassman v. Am. Univ.*, 546 F.2d 1029, 1032 (D.C. Cir. 1976) (per curiam). And at the pleading stage, the economic loss doctrine does not properly apply to counts two and three because, in certifying the 2006 Survey to Appellant, KCI plausibly "undertook obligations that would 'implicate [appellant's] economic expectancies,'" *Whit v. Am. Prop. Constr., P.C.*, 157 A.3d 196, 205 (D.C. 2017) (alteration in original) (quoting *Aguilar* v. *RP MRP Wash. Harbour, LLC,* 98 A.3d 979, 985 (D.C. 2014)).

\*\*\*

For the foregoing reasons, we reverse the District Court's order dismissing Appellant's complaint as to counts one, two, and three and remand for proceedings consistent with this opinion.

*So ordered.*