# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 12, 2019　　　　　Decided August 13, 2019

No. 18-7135

CAPITOL SERVICES MANAGEMENT, INC.,
APPELLANT

v.

VESTA CORPORATION,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-01756)

*Donald M. Temple* argued the cause and filed the briefs for appellant.

*Lindsay D. Breedlove* argued the cause and filed the brief for appellee.

Before: TATEL, MILLETT, and KATSAS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*:　This case concerns the proper application of the discovery rule to tortious interference claims under District of Columbia law.　The district court determined that the lawsuit filed by plaintiff Capitol Services Management,

Inc. was barred by the statute of limitations because Capitol Services was on "inquiry notice" of the defendant's alleged interference with its contract long before the limitations period expired. But at the motion-to-dismiss stage, dismissal on statute-of-limitations grounds is permissible only if a plaintiff's claims are conclusively time-barred on the face of the complaint. That strict standard was not met here, so we reverse and remand the case for further proceedings.

**I**

**A**

The Park Southern building (the "Property") is an apartment complex located in Southeast Washington, D.C. In 2006, the Park Southern Neighborhood Corporation ("Park Southern") acquired the Property from its prior owner, the District of Columbia, subject to a Deed of Trust. Under the terms of their agreement, if Park Southern defaulted on the terms of the Deed, the District could resume control of the Property.

Park Southern contracted with Vesta Corporation to serve as the Property's manager. However, Park Southern eventually became dissatisfied with Vesta's performance and, in March 2014, terminated its contract. Park Southern and Capitol Services then entered into a one-year management agreement that would then continue on a "year-to-year basis," unless either party terminated it with three months' notice. Complaint ¶¶ 9–10, J.A. 6.

District officials began talking almost immediately about Park Southern's management reshuffle. Milton Bailey, a District employee, emailed the Mayor's chief of staff advising that "'[w]e already have enough to send default and foreclosure

notices' to effectively takeover [*sic*] the property." Complaint ¶ 13, J.A. 7. In a telephone call in late March, Vesta relayed to Bailey its intent to "continue to manage the property and to provide [the District with] whatever assistance [it] need[s] with respect to the ongoing condition of the property." *Id.* ¶ 16, J.A. 7. Vesta also communicated with the District by private email, and participated in at least five other conference calls regarding Capitol Services, the Property's "management issues," and Vesta's "interests." *Id.* ¶¶ 17–18, J.A. 8.

Things came to a head on May 2, 2014, when the District exercised its default remedy under the Deed of Trust and immediately took over the Property. That same day, without providing any notice to Capitol Services, the District entered into an "emergency contract" with Vesta, authorizing it to take over property management duties from Capitol Services the very next day.

Capitol Services filed suit against the District in Superior Court in July 2014. It filed an amended complaint against the District in October 2014, asserting (as relevant here) claims of tortious interference with contract and with business opportunity. In July 2016, as part of discovery in that action, Capitol Services deposed Milton Bailey. In Capitol Services' view, Bailey's testimony "revealed considerable evidence" of Vesta's alleged tortious interference. J.A. 57. Yet with respect to its claims against the District, Capitol Services came up short. In a May 2017 opinion, the Superior Court entered judgment for the District, finding that the court lacked jurisdiction because the District was entitled to sovereign immunity. The court also ruled that Capitol Services had failed to establish a *prima facie* case of tortious interference by the District.

**B**

On August 28, 2017, Capitol Services filed suit against Vesta in the United States District Court for the District of Columbia. Its complaint asserted claims for tortious interference with business relations and tortious interference with reasonable expectation of prospective economic advantage. Vesta moved to dismiss, asserting that (i) Capitol Services' claims were time-barred; (ii) Capitol Services was collaterally estopped from relitigating issues decided in the Superior Court action; and (iii) Capitol Services failed to state claims for which relief could be granted.

Reaching only the first issue, the district court agreed that the statute of limitations barred the suit. The court ruled that the District's three-year statute of limitations for tortious interference claims began to run on May 3, 2014, when the District terminated Capitol Services' contract and substituted Vesta in its place. Because Capitol Services did not file suit until August 28, 2017, the court dismissed the lawsuit as untimely.

In so ruling, the district court rejected Capitol Services' rejoinder that the discovery rule delayed the start of the limitations period until July 2016, when Capitol Services deposed Milton Bailey as part of the Superior Court action. In the district court's view, Capitol Services was on inquiry notice of its claims against Vesta as soon as the District ended the contract because, at that point, Capitol Services had "reason to suspect that [Vesta] did some wrong." J.A. 111. The court added that Capitol Services surely was on inquiry notice far earlier than Bailey's deposition because Capitol Services' Superior Court amended complaint against the District alleged Vesta's involvement in terminating its management agreement.

5

Capitol Services timely appealed.

## II

The district court had diversity jurisdiction under 28 U.S.C. § 1332(a)(1). This court's jurisdiction rests on 28 U.S.C. § 1291.

We review *de novo* a Rule 12(b)(6) dismissal on statute-of-limitations grounds, accepting plaintiff's well-pleaded factual allegations as true and drawing all reasonable inferences in plaintiff's favor. *Momenian v. Davison*, 878 F.3d 381, 387 (D.C. Cir. 2017). At the motion to dismiss stage, dismissal on statute-of-limitations grounds is proper "only if the complaint on its face is conclusively time-barred." *Commonwealth Land Title Ins. Co. v. KCI Techs., Inc.*, 922 F.3d 459, 464 (D.C. Cir. 2019); *accord Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).

Capitol Services argues that the district court effectively converted the case to summary judgment by considering its pleadings in the Superior Court action, and so the summary-judgment standard of review should govern. But no such conversion occurred. District courts may, at the Rule 12(b)(6) stage, take judicial notice of publicly filed pleadings in related actions as evidence of what was alleged in the other actions, although they may not treat as true the matter alleged. *Hurd v. District of Columbia*, 864 F.3d 671, 686 (D.C. Cir. 2017); *see also* FED. R. EVID. 201(b).

That is all the district court did here. The district court properly took notice of Capitol Services' allegations in the Superior Court action not for their truth, but for the fact that Capitol Services believed those allegations to be true and

viable as legal claims at the time they were made. *See Watkins v. United States*, 854 F.3d 947, 949 (7th Cir. 2017).

So this remains an appeal of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## III

On appeal, Capitol Services asserts that its complaint against Vesta was timely because the three-year statute of limitations did not begin to run until it had inquiry notice of "all of the essential elements of its cause[s] of action" against Vesta. Capitol Servs. Br. 32. In Capitol Services' view, that did not happen until it deposed Milton Bailey in July 2016. Capitol Servs. Br. 33–39. From that deposition, reports Capitol Services, it learned that Vesta had the motive or purpose to "intentional[ly] interfere[]" with its business dealings managing the Property. Capitol Servs. Br. 34–39. Vesta, for its part, insists that Capitol Services had sufficient notice to trigger the statute of limitations at the earliest when it was ousted from its contract in May 2014 and Vesta took over, and at the latest in July 2014 when it filed suit against the District. *See* Vesta Br. 23–33.

As it happens, neither party is correct. As explained below, inquiry notice was triggered sometime after the filing of the original July 2014 complaint against the District, but before the filing of the October 2014 amended complaint, which referenced Vesta's interference. When exactly during that three-month period Capitol Services was on inquiry notice of Vesta's alleged role is an unresolved factual question on this record, making dismissal under Rule 12(b)(6) erroneous.

**A**

Before reaching the merits, we first address Vesta's argument that Capitol Services did not properly preserve its statute-of-limitations argument for appellate review. We find no merit to this objection.

As an appellate court, "we are a court of review, not of first view[.]" *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005). For that reason, absent "exceptional circumstances," this court does not entertain issues first raised on appeal. *Woodruff v. Peters*, 482 F.3d 521, 525 (D.C. Cir. 2007).

Vesta objects that, before the district court, Capitol Services argued that it had inquiry notice only upon learning of the "depth and breadth of Vesta's involvement and communications with the District." Vesta Br. 20 (quoting J.A. 57). According to Vesta, Capitol Services has shifted gears on appeal in arguing that it lacked any knowledge of Vesta's "motive" or "intent" to interfere. Vesta Br. 20.

That is a distinction without a difference. Both before the district court and this court, Capitol Services has argued that it was not on inquiry notice of Vesta's alleged tortious interference at the time its contract was terminated in May 2014 and, indeed, until Bailey's July 2016 deposition revealed details about Vesta's role. Although its emphasis has changed, Capitol Services has argued consistently that the facts it learned at that deposition were necessary for it to have inquiry notice of its causes of action. *See Yee v. City of Escondido*, 503 U.S. 519, 534 (1992) ("Once a * * * claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below."); *In re Harman Int'l Indus., Inc. Sec. Litig.*, 791 F.3d 90, 100 (D.C. Cir. 2015) ("On appeal, a party may refine and clarify its

analysis in light of the district court's ruling, including citing additional support.") (formatting modified); *Koch v. Cox*, 489 F.3d 384, 391 (D.C. Cir. 2007) (A party may cite "additional support for his side of an issue upon which the district court did rule, much like citing a case for the first time on appeal.").

On to the merits.

**B**

We take as given the parties' agreement that District of Columbia law governs this tort dispute. *See Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012) (applying District of Columbia law "which both parties assume applies"). Under District law, Capitol Services' claims for tortious interference with business relations and tortious interference with reasonable expectation of prospective economic advantage are subject to a three-year statute of limitations. D.C. CODE § 12-301(8); *see Beard v. Edmondson & Gallagher*, 790 A.2d 541, 546 (D.C. 2002); *Carr v. Brown*, 395 A.2d 79, 83 (D.C. 1978). *See generally Hartford Accident & Indem. Co. v. Pro-Football, Inc.*, 127 F.3d 1111, 1118 (D.C. Cir. 1997) ("Since [plaintiff's] claims arise under District law, the applicable statute of limitations is also that of the District.").

Ordinarily under District law, the statute of limitations for a tort claim starts to run when the plaintiff is injured. *See Amobi v. District of Columbia Dep't of Corr.*, 755 F.3d 980, 994 (D.C. Cir. 2014). All agree that Capitol Services was injured on May 3, 2014, when the District terminated its management contract. If that were the end of the story, basic math would render Capitol Services' August 28, 2017 filing of this lawsuit untimely.

9

But Capitol Services contends, and Vesta does not meaningfully dispute, that the District of Columbia's discovery rule delays the start of the statute of limitations until Capitol Services had actual or inquiry notice of its potential causes of action against Vesta. *See Momenian*, 878 F.3d at 388.[1]

Where Capitol Services and Vesta part ways is over (i) what "inquiry notice" demands, and (ii) whether it is "conclusive" on the face of the complaint that Capitol Services was on inquiry notice of its claims against Vesta more than three years before it filed suit.

**1**

A claim accrues under the discovery rule when the plaintiff "either has actual knowledge of a cause of action" or is otherwise "charged with knowledge of that cause of action." *Cevenini v. Archbishop of Wash.*, 707 A.2d 768, 771 (D.C. 1998). The latter is known as "inquiry notice." Inquiry notice is "that notice which a plaintiff would have possessed after due investigation." *Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996). It does not refer to "the amount of information that triggers a duty to investigate," but rather the "quantum of knowledge required to" "charge[] [a plaintiff] with knowledge

---

[1] Vesta dedicated a measly three parenthetical words in its brief to the applicability of the discovery rule. *See* Vesta Br. 27 ("In the case at bar, the district court * * * concluded that even if the discovery rule applied (*it does not*), Capitol Services' claim nonetheless accrued in March 2014.") (emphasis added). That was not enough to put the issue in controversy. *See Davis v. Pension Benefit Guar. Corp.*, 734 F.3d 1161, 1166–1167 (D.C. Cir. 2013) (A party may not "mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.") (internal quotation marks omitted).

of [his] cause of action[.]" *Id.*; *see BDO Seidman v. Morgan, Lewis & Bockius LLP*, 89 A.3d 492, 500 (D.C. 2014). Under District of Columbia law, the time at which a plaintiff acquires inquiry notice "is a question of fact." *Diamond*, 680 A.2d at 372.

Following multiple decisions of the District of Columbia Court of Appeals, this Court has repeatedly applied the discovery rule to postpone the running of a statute of limitations until the plaintiff "knows or by the exercise of reasonable diligence should know: (1) of the injury; (2) the injury's cause in fact; and (3) of some evidence of wrongdoing." *Commonwealth Land*, 922 F.3d at 464 (quoting *Capital Place I Assocs. L.P. v. George Hyman Constr. Co.*, 673 A.2d 194, 199 (D.C. 1996)).[2]

Under that test, Capitol Services' claims accrued when, after due investigation, it would have learned of its injury, the injury's cause in fact, and "some evidence" of Vesta's wrongdoing. *Commonwealth Land*, 922 F.3d at 464. Yet as Capitol Services notes, the District's Court of Appeals has sometimes articulated its discovery rule differently, stating that claims do not accrue until the plaintiff has "discovered or reasonably should have discovered all of the essential elements of his possible cause of action." *Price v. Washington Metro.*

---

[2] *Accord Hancock v. HomEq Servicing Corp.*, 526 F.3d 785, 786 (D.C. Cir. 2008) (quoting *Diamond*, 680 A.2d at 381); *Bradley v. National Ass'n of Sec. Dealers Dispute Resolution, Inc.*, 433 F.3d 846, 849 (D.C. Cir. 2005) (quoting *Bussineau v. President & Dirs. of Georgetown College*, 518 A.2d 423, 425 (D.C. 1986)); *Jung v. Mundy, Holt & Mance, P.C.*, 372 F.3d 429, 433 (D.C. Cir. 2004) (quoting *Knight v. Furlow*, 553 A.2d 1232, 1234 (D.C. 1989)); *Goldman v. Bequai*, 19 F.3d 666, 671–672 (D.C. Cir. 1994) (quoting *Knight*, 553 A.2d at 1234); *Williams v. Mordofsky*, 901 F.2d 158, 162 (D.C. Cir. 1990) (quoting *Knight*, 553 A.2d at 1234).

*Area Transit Auth.*, 41 A.3d 526, 533 (D.C. 2012) (formatting modified); *accord Owens-Corning Fiberglass Corp. v. Henkel*, 689 A.2d 1224, 1231 (D.C. 1997); *Arrington v. District of Columbia*, 673 A.2d 674, 678 (D.C. 1996); *Colbert v. Georgetown Univ.*, 641 A.2d 469, 473 (D.C. 1994) (en banc). And because a *prima facie* case of tortious interference with business relations or with reasonable expectation of prospective economic advantage requires that a plaintiff plead "intentional interference," *Jankovic v. International Crisis Group*, 593 F.3d 22, 29 (D.C. Cir. 2010); *NCRIC, Inc. v. Columbia Hosp. for Women Med. Ctr., Inc.*, 957 A.2d 890, 900 (D.C. 2008), Capitol Services reasons that the statute of limitations did not begin running until it "received notice that Vesta intentionally interfered with [its] expectation that it would continue to perform property management services" at the Property, Capitol Servs. Br. 34.

Predicting whether the District's Court of Appeals would find light between the "some evidence of wrongdoing" and "all elements" tests would be no easy task. *See Earle v. District of Columbia*, 707 F.3d 299, 310 (D.C. Cir. 2012). There is caselaw on both sides of the ledger. *Compare Hardi v. Mezzanotte*, 818 A.2d 974, 979 (D.C. 2003), *and East v. Graphic Arts Indus. Joint Pension Trust*, 718 A.2d 153, 157 (D.C. 1998), *with Morton v. National Med. Enters., Inc.*, 725 A.2d 462, 469 (D.C. 1999), *and Cevenini*, 707 A.2d at 771. Ultimately, that is a job for another day. Even assuming the "some evidence of wrongdoing" standard is stricter for plaintiffs, Capitol Services' lawsuit is timely.

**2**

There is no dispute that, as of May 3, 2014, Capitol Services had "actual notice" of its injury—the cancellation of its property management contract. And Capitol Services knew

then that the injury was caused by the District's decision to award an "emergency contract" to Vesta. *See* Vesta Br. 27–28; Capitol Servs. Br. 33–34. There is also no meaningful dispute that Capitol Services lacked "actual notice" of Vesta's wrongdoing as of that date. *See* Vesta Br. 28–31; Capitol Servs. Br. 30, 36–37.

The district court, instead, ruled that Capitol Services was on inquiry notice as of May 3rd. Specifically, the district court reasoned that Capitol Services had "reason to suspect that Vesta did some wrong" because it knew that (i) the District had issued an "emergency contract" to Vesta, (ii) the District "inappropriately terminated" Capitol Services' agreement, and (iii) Capitol Services' relationship with Park Southern "ended." J.A. 110–111.

While those facts certainly put Capitol Services on notice of its claims against the District, there is nothing in the description of the District's actions that hinted at *Vesta's* role in the contract's termination. "[P]laintiff's knowledge of wrongdoing on the part of" the District itself "did not cause accrual of his action against another[.]" *Diamond*, 680 A.2d at 380; *see also Cevenini*, 707 A.2d at 773 ("[K]nowledge of misconduct on the part of one defendant will not automatically create inquiry notice of claims against a potential co-defendant[.]").

Nor did the district court identify what evidence a "diligent investigation" at that point would have uncovered about Vesta's participation in the District's decisionmaking. *Diamond*, 680 A.2d at 372; *see Commonwealth Land*, 922 F.3d at 464. Because Capitol Services had reported to Park Southern, not the District, and because the District had declined to provide notice to Capitol Services of its ouster, nothing in the initial complaint suggests that Capitol Services had any

knowledge or even suspicions of background relationships or connections between Vesta and the District government. Even the written communication between the District and Vesta were by "private e-mails, which effectively circumvented FOIA scrutiny." Complaint ¶ 17, J.A. 8. The complaint does not "conclusively establish" any facts uncoverable by Capitol Services on May 3, 2014, or even by August 28, 2014 (that is, three years before the complaint against Vesta was first filed) that would have implicated Vesta in its injury within the three-year limitations period.

Vesta argues, in the alternative, that Capitol Services was on inquiry notice in July 2014, when it filed its complaint against the District in Superior Court. This is so, Vesta explains, because the complaint repeatedly alleges Vesta's role in inducing Capitol Services' contract termination. *See, e.g.*, J.A. 32 ¶ 18 (The District "terminated the contract and awarded it immediately to Vesta because of political and personal connections on the pretense of an 'emergency contract' award. Upon information and belief, certain [District] representatives jointly engaged in this decision. Said officials also collaborated with Vesta regarding the government's actions in advance of [the District's] May 3 * * * takeover of the property."); J.A. 32 ¶ 19 (The District's "purported qualification of the contract award to Vesta as an 'Emergency' was pretextual. It was intended to cause the removal of [Capitol Services] and the substitution of Vesta as the property's property manager."); J.A. 34 ¶ 29 ("Upon information and belief, * * * one or more [District] officials consulted improperly and illegally with yet known [*sic*] Vesta officials to achieve the termination of [Capitol Services'] Agreement and the award of an 'emergency' contract to Vesta in order to block [Capitol Services'] business opportunities."); J.A. 38 ¶ 48 (The District "impeded [Capitol Services'] business relationship and prospective advantages/opportunities

in order to advantage the interests of [Vesta], declared a non-existing pretextual 'emergency' situation and awarded an illegal 'emergency [contract]' to [Vesta]."); J.A. 39 (asserting a claim against the District for civil conspiracy); *see also* D.C. R. CIV. P. 11(b)(3) (imposing an obligation on counsel to assert only factual contentions having evidentiary support).

That would be a really good argument if Vesta were discussing the right version of the complaint. But those allegations appear nowhere in Capitol Services' July 2014 complaint against the District. The allegations in the July 2014 complaint reference Vesta only in innocuous and fleeting factual recitations. *See* Complaint ¶ 17, *Capitol Servs. Mgmt. Inc. v. District of Columbia*, No. 2014 CA 004551 B (D.C. Super. Ct. July 24, 2014) (The District "entered into an 'emergency contract' with Vesta * * * on May 2, 2014, to authorize Vesta to take over the management of Park Southern Apartments on May 3, 2014."); *id.* ¶ 18 ("In executing said contract with Vesta, [the District] immediately terminated the management agreement between [Park Southern] and [Capitol Services]."); *id*. ¶ 31.

The allegations that Vesta cites and on which Vesta's argument relies come from Capitol Services' amended Superior Court complaint. That was filed in *October* 2014—squarely within the three-year period preceding the lawsuit against Vesta.

Finally, in light of the allegations in its amended complaint, Capitol Services' insistence that it had no notice until its deposition of Milton Bailey in July 2016 pushes things too far. Inquiry notice commences when, with due diligence, a plaintiff would have been on notice that a particular defendant's wrongdoing caused or contributed to a potential injury. *See, e.g.*, *Diamond*, 680 A.2d at 372. It does not wait

until a plaintiff has actually assembled the evidence in deposition form.

So all that the limited record shows at this Rule 12(b)(6) stage is that Capitol Services was *not* on actual or inquiry notice in either May or July of 2014, but was on inquiry notice at least by October 2014. The record is inconclusive as to Capitol Services' knowledge about Vesta's role prior to August 28, 2014—three years before this suit against Vesta was filed. When during that intervening period Capitol Services had inquiry notice of Vesta's potential role thus is an open factual question that cannot be resolved at this early juncture.

**IV**

This court can affirm a district court's judgment on any basis supported by the record. *See United States v. Hicks*, 911 F.3d 623, 626 (D.C. Cir. 2018). Vesta asks this court to do just that, arguing that even if the complaint is timely, Capitol Services nonetheless is collaterally estopped from relitigating the question of alleged tortious interference with its contract. Vesta points to the prior Superior Court judgment dismissing Capitol Services' case against the District arising from termination of the Property contract. *See* J.A. 43–49.

Vesta fares no better on this front. The Superior Court held that it lacked jurisdiction to adjudicate the suit against the District, and so a central element for collateral estoppel is missing.

Collateral estoppel, also known as issue preclusion, generally confines plaintiffs to one bite at the litigation apple. *See B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1302–1303 (2015). Specifically, collateral estoppel bars successive litigation of an issue of fact or law when

(1) the issue is actually litigated; (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; and (4) under circumstances where the determination was essential to the judgment, and not merely dictum.

*Walker v. FedEx Office & Print Servs., Inc.*, 123 A.3d 160, 164 (D.C. 2015) (quoting *Hogue v. Hopper*, 728 A.2d 611, 614 (D.C. 1999)). *See generally Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 857–858 (D.C. Cir. 2015) (applying preclusion rules of the jurisdiction in which the judgment was rendered).

Vesta directs our attention to language in the Superior Court's 2017 decision stating that it found "no evidence" "that the District of Columbia actually interfered with [Capitol Services'] contract or its business relationship with [Park Southern] because neither the District of Columbia nor [Park Southern] took any action to terminate it," and instead "it appear[ed] to the court that [Capitol Services] voluntarily decided not to enforce its claimed rights[.]" J.A. 48. Because Capitol Services failed to show *any* interference in that case, Vesta argues, Capitol Services should be precluded from relitigating whether it suffered tortious interference at Vesta's hands.

The Achilles heel of that argument is that, immediately before remarking on contract interference, the Superior Court ruled that it could not adjudicate the lawsuit because the District enjoyed sovereign immunity from suit, and so was "entitled to summary judgment" on that basis. J.A. 48. The District's sovereign immunity is a jurisdictional bar to litigation—if it is not waived, the sovereign's entitlement to immunity deprives the court of subject matter jurisdiction over

the action. *See Washington Metro. Area Transit Auth. v. Barksdale-Showell*, 965 A.2d 16, 21 n.4 (D.C. 2009). So once the Superior Court concluded that it was without jurisdiction, it could not "reach beyond that determination to consider whether th[e plaintiff's] claims would be meritorious if the defect in [jurisdiction] were cured[.]" *UMC Dev., LLC v. District of Columbia*, 120 A.3d 37, 49 (D.C. 2015).

The absence of jurisdiction meant the Superior Court could not and did not actually resolve "on the merits" Capitol Services' tortious interference claim against the District, and so the court's comments on the subject were "merely dictum[,]" in no way "essential to the judgment[.]" *Walker*, 123 A.3d at 164.[3] As a result, the critical elements of collateral estoppel have not been established in this case.

## V

Lastly, Vesta asks that we affirm on the ground that Capitol Services failed to state a claim on the merits for either tortious interference with business relations, or tortious interference with reasonable expectation of prospective economic advantage. Because the district court did not address those questions and the parties have dedicated scant appellate

---

[3] *See also United States ex rel. Bledsoe v. Community Health Sys., Inc.*, 501 F.3d 493, 507 (6th Cir. 2007) (holding that the conclusion in a prior court's opinion was "more properly characterized as dicta than an alternative holding[]" because the court had "concluded that it lacked subject matter jurisdiction"); *Moreland v. Federal Bureau of Prisons*, 431 F.3d 180, 185 (5th Cir. 2005) (holding that the conclusion in a prior court's opinion was "dicta because the petition in [that opinion] was dismissed for lack of subject-matter jurisdiction," and was not an "alternative holding because it could not support the actual judgment in that case, which was dismissal for lack of subject-matter jurisdiction").

briefing to the issues, it would be unwise for us to wade in at this time and on this record. The issue, of course, remains open for the district court to address on remand.

## VI

For the foregoing reasons, we reverse the district court's judgment dismissing the case under Federal Rule of Civil Procedure 12(b)(6) on statute-of-limitations grounds and remand for further proceedings consistent with this opinion.

*So ordered*.